SAMUEL, Judge.
Acting through its co-administrators, the Succession of Martin Schwegmann instituted this suit against Edmond Schweg-mann, one of the decedent’s sons and heirs, *386 for the return of certain real estate. Alleging that a 1966 sale from the decedent to the defendant of the front portion of a large tract of land seriously decreased the value of the remaining portion of the property now owned by the succession, plaintiff prayed for judgment ordering the collation and/or return of the real estate in kind. Alternatively, it sought to have the transfer decreed to be a simulation, a donation in disguise, or a sale for an inadequate consideration. Although the record does give a different impression, counsel for both, litigants agree the trial court judgment was by way of confirmation of default. In any event, no evidence was offered on behalf of the defendant and judgment was rendered in favor of the defendant, dismissing plaintiffs suit. Plaintiff has appealed.
Decedent was married but once, of which marriage eight children were born. He is survivied by his widow and seven of the children and there are two children left by a son who predeceased him. On March 21, 1938 he purchased a tract of land in Ames Farm Subdivision,’ Jefferson Parish, known as Lot E8. During the following years he sold some portions of the property, including transfers made between 1955 and 1964 to four of his sons. The other children received similar transfers of other property. The remaining portion of the original tract was subdivided on March 31, 1966 into Lots E8D and E8E. Lot E8D is the property herein said to be returned to the succession. On April 12, 1966 that lot was transferred by the decedent to the defendant by a notarial act of sale which recited a cash consideration of $6,500. The land thus sold to Edmond is in the front part of the property and the lots acquired by the other brothers are in the rear part of the tract. Martin Schwegmann died on February 21, 1969.
■ In support of its claim the plaintiff relies solely on the testimony of Martin A. Schwegmann one of the decedent’s sons, James Malone, a real estate appraiser, the deposition of Mrs. Nettie Schwegmann, widow of the decedent, and various exhibits introduced in evidence. The record contains a photostatic copy of a First National Bank of Jefferson (defendant’s bank) cashier’s check payable to the decedent in the sum of $6,500 and dated April 12, 1966 (the date of the contested sale). The check was cashed. It is endorsed by the decedent alone and his endorsed signature was positively identified by his widow.
The testimony of Martin A. Schweg-mann is to the effect that in 1964, following a sewerage assessment against the property, his father called a family meeting at which he requested that the children pay the assessment in return for which payment he would transfer to them the remaining portion of the original lot, E8. Martin A., as the oldest son, was delegated to consult an attorney to carry out his father’s wishes. Arrangements to pass the contemplated act or acts were made but when Martin A. went to his father’s home Mr. Schwegmann was unable to locate the title. Nothing further was accomplished on the attempted transfer. Martin A. did not learn about the resubdivision of the property and the subsequent sale of a portion to Edmond until approximately six months after that sale. The record contains no evidence indicating that Martin A. ever discussed the sale to Edmond with his father although Mr. Schwegmann did not die until approximately three years later.
Mrs. Schwegmann testified she learned her husband no longer owned the front portion of the property from her neighbors approximately two years before the decedent’s death. She did not discuss the matter with her husband, nor did he mention the matter to her.
Both Martin A. and Mrs. Schwegmann further testified that the transfers of property by the decedent to his four sons and to his other children were made as gifts and that no consideration, other, than the legal fees and costs connected with the various acts of sale, were paid by any of the transferees.
*387 Plaintiff attempts to discredit the sale to the defendant by inferring the decedent did not receive the $6,500 proceeds from the cashier’s check because Mrs. Schwegmann did not know about the money and there is no record of it having been deposited to the couple’s savings account. However, Mrs. Schwegmann admitted the decedent did not believe in banks, did not have a checking account, and customarily kept money around the house. He often carried several hundred dollars in his wallet. In addition, Mrs. Schwegmann and her brother had inherited $28,000 from their mother and her share, approximately $14,000, was never placed in the bank; that amount, in cash, was kept around the house and used as needed.
Mr. Malone, the real estate appraiser, testified the original tract consisted of 16.-619 acres. He considered sales of six fairly large tracts in the general area and arrived at a valuation of $11,500 an acre, or a total value of $191,118.50 for the entire original Schwegmann tract. He placed a value of $43,900 on Lot E8D, the property in suit. His testimony indicates this was its value on the date he testified, May 12, 1972. However, his proposal report, which was introduced in evidence, states the date applicable to that and other appraisal values was February 21, 1969.
In this court appellant makes these alternative contentions: (1) pursuant to Civil Code Article 2444, the transfer of Lot E8D to the defendant was a donation in disguise with no consideration or inadequate consideration being received by the decedent; (2) the defendant should be required to collate and/or return that lot in order to promote equality among the heirs; and (3) pursuant to Civil Code Article 2480 the transfer in suit is a simulation.
The trial court found the defendant had paid and the decedent had received the consideration of $6,500 as recited in the act of sale by him to the defendant. We agree with that conclusion. The record affirmatively establishes payment of that amount and contains no competent evidence to the contrary. Nor does the record establish that the transfer was a donation in disguise under Civil Code Article 2444. That article provides:
“The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale.” LSA-C.C. Art. 2444.
Under its clear wording, Article 2444 is not applicable in the absence of proof that the price paid for the immovable was below one-fourth of its value at the time of the sale. Here the only evidence relative to value was given by the appraiser-witness and, as has been pointed out, his testimony and report set that value at $43,900 only as of May 12, 1971, the date he testified, or February 21, 1969, the date of the decedent’s death. There is no evidence showing the value of the property in suit on April 12, 1966, the date of the sale, which was approximately six years prior to the date on which Mr. Malone testified and three years prior to the date of decedent’s death. Thus, as the record contains no proof of the value of the immovable at the time of the sale, Article 2444 is inapplicable in the instant case.
Nor do we agree with appellant’s second contention, that the property in suit should be collated in order to promote equality among the heirs. Collation is the supposed or real return to the mass of the succession which an heir makes of property he received in advance of his share or otherwise.[1] Collation does not apply where, as here, the property sought to be collated was received by the heir as the result of a valid sale which has not been *388 shown to be a donation in disguise under Civil Code Article 2444.
Appellant’s third contention relative to simulation also is without merit. The article on which it relies, Civil Code Article 2480, reads:
“In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usu-fruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.” LSA-CC. Art. 2480.
Here there is no evidence whatsoever showing that the decedent remained in possession of the property. Indeed, the only evidence on the subject is to the contrary. There is some testimony which indicates that following the sale by the decedent to the defendant, one of the sons who rented that property ceased paying rent to the decedent.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. LSA-C.C. Art. 1227.